# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| TRADE ANTIQUES, LLC, | * | |
| Plaintiff, | * | |
| vs. | * | CV 211-183 |
| EDWARD R. CANADY, | * | |
| Defendant. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Plaintiff Trade Antiques LLC. See Dkt. No. 36. For the reasons stated below, Plaintiff's Motion is **DENIED**.

## BACKGROUND

Back in 2003, Trade Antiques bought a piece of property located in St. Marys, Georgia ("the Property"). Dkt. No. 36, Ex. 16. The Warranty Deed mistakenly listed Trade Antiques as a Georgia limited liability company, when, in actuality, Trade Antiques was organized in Florida, not Georgia. Dkt. No. 36, Ex. 2.[1]

---

[1] On August 17, 2011, Trade Antiques' counsel corrected the error in the deed by submitting a Scrivener's Affidavit. See Dkt. No. 1. This correction occurred well after the events giving rise to the suit occurred.

1

Six years later, Andrew Christie, the managing member of Trade Antiques, had to leave the United States to move to Scotland to attend to family matters. Dkt. No. 36, Ex. 16 ¶ 4. When he left, Christie knew there were unpaid taxes on the Property. Dkt. No. 38, Ex. B 19:3, 37:3-9. Christie left Craig Rosian in charge of looking after the Property in Christie's absence. Dkt. No. 38, Ex. B 19:10-14. Rosian was tasked with "looking after the property, keeping the grass cut, keeping the bills down, and informing [Christie] of any mail that c[a]me through the letter box," and essentially keeping Christie "posted" on anything that occurred. Dkt. No. 38, Ex. B 19:10-14. At some point, Rosian asked if his daughter could live at the Property, and Christie agreed. Dkt. No. 38, Ex. B, 24:7-9.

Rosian seemingly failed in his duties because, on October 6, 2009, the Property was sold in a tax sale to Defendant Edward R. Canady for $7,5000. Dkt. No. 36, Ex. 16 ¶ 5. For a year after the tax sale, Canady did not take possession of the property in an effort to comply with Georgia's tax sale law. Dkt. No. 36, Ex. E 77:7-14. After the year had passed, Canady sought to take possession of the property and foreclose Trade Antique's right to redeem the property under O.C.G.A. § 48-4-45. Section 48-4-45 proscribes the steps a tax sale purchaser must take to foreclose the previous owner's right of redemption.

Prior to sending the required notices, Canady took the following steps to find out information about Trade Antiques. He went to the courthouse to determine if there were any liens on the Property and to view the deeds. Dkt. No. 26, Ex. E, 64:8-16. Canady also asked the City, the police department, the power company, and the post office about any information on the Property's previous owner. Dkt. No. 38, Ex. J., 64:8-15, 56:8-11. The City informed him that Christie was associated with Trade Antiques and he also owned a small parcel nearby. Dkt. No. 26, Ex. E, 64:8-16. Neither the City, nor the County, nor the Police Department knew Christie's current address. Dkt. No. 26, Ex. E, 64:8-16. City employees, however, did inform Canady that they thought Christie lived "somewhere in Scotland" and that the last thing they had heard was that Christie was in jail. Dkt. No. 36, Ex. E, 65:19-24. Canady also talked with one of the neighboring landowners about the Property's previous owner. However the neighbor did not have any more information. Dkt. No. 38, Ex. J., 120:9-25, 121:17-25, 122:1-13.

To provide notice of his desire to foreclose Trade Antiques's right to redeem, Canady (1) had the Sheriff tack a notice on the front door of the Property, (2) published a notice in the applicable newspaper, (3) had the Sheriff send a notice to the only address for Trade Antiques he had, which was the address of the Property, and (4) sent a notice of his own to the

3

Property's address. Dkt. No. 36, Ex. 16 ¶ 12. The notice provided by Canady asserted that the right to redeem would terminate on November 25, 2010. Dkt. No. 36, Ex. G.

In February 2011, Christie, for the first time, was informed by Rosian of the tax sale and Canady's interest in the property. Dkt. No. 38, Ex. B, 32:19-22. Upset by the news, Christie and his parents arranged for Paul McCourt to fly to America to investigate the situation and see what could be done. Dkt. No. 38, Exhibit J, 32:19-22. Christie, along with his parents, gave McCourt power of attorney to deal with their rights in the Property. Dkt. No. 38, Ex. N. The Power of Attorney Agreement stated that "Andrew Christie presently of Trade Antiques" appointed McCourt as his representative. Dkt. No. 38, Exhibit N. McCourt negotiated with Canady to settle the rights between Christie and Christie's parents as to the Property. Dkt. No. 36, Ex. K. Canady transferred to Christie and his parents another parcel of land worth $40,000 to settle any dispute as to ownership. Dkt. No. 38, Ex. I.

On August 19, 2011, counsel for Trade Antiques sent a letter and a check to Canady attempting to exercise its right of redemption by paying the statutory fee. See Dkt. No. 36, Ex. H. Canady refused the check, stating that Trade Antiques right to redeem the property had been properly foreclosed.

4

Several months later, on November 2, 2011, Trade Antiques filed suit against Canady seeking a declaratory judgment that it was in fact the proper owner of the Property. See Dkt. No. 1. Canady answered the Complaint and also asserted a counterclaim for unjust enrichment. See Dkt. No. 27. Canady alleged that he had spent a considerable amount of time and money improving the property after he took ownership, and should Trade Antiques be able to redeem the property, it would be unjustly enriched by Canady's efforts. See Dkt. No. 27.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative

AO 72A
(Rev. 8/82)

evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Summary judgment is inappropriate because Trade Antiques did not meet its burden of establishing that there are no issues of material fact.

Before foreclosing a previous owners' right to redeem, a tax sale purchaser must provide adequate notice. See Funderburke v. Kellet, 364 S.E.2d 845, 847 (Ga. 1988). Notice must satisfy the requirements of both constitutional due process and Georgia's statutes concerning the right to redeem. Mennonite Bd. of Missions v. Adams, 461 U.S. 791, 798-99 (1983). Merely satisfying the Georgia code provisions dealing with the right to redeem may not be enough because constitutional due process may require more additional steps. Hamilton v. Renewed Hope, 589 S.E.2d 81 (Ga. 2003) ("Hamilton I").

However, in this particular case, both constitutional due process and O.C.G.A. § 48-4-45 require essentially the same actions by a tax sale purchaser. Due process requires that the means employed to provide notice are what someone "desirous of actually informing the absentee might reasonably adopt to accomplish [that task]." Jones v. Flowers, 547 U.S. 220, 229 (2006). When a party becomes aware that the method used to provide notice has failed, due process requires "reasonable

6

followup measures." Id. at 222. However, "extraordinary efforts to discover" the absentee party's whereabouts are not required. Mennonite, 462 U.S. at 798 n.4.

Like the due process inquiry, Georgia's statutory scheme also focuses on reasonableness. O.C.G.A. § 48-4-45 requires that, for persons residing outside the county where the property is located, the tax sale purchaser send notice by registered or certified mail or statutory overnight delivery "if the address of that person is *reasonably ascertainable*." O.C.G.A. § 48-4-45(a)(2) (emphasis added). Georgia courts have stated that the laws "governing the right to redeem are to be construed liberally and most favorably to persons allowed by the statute to redeem." H&C Dev., Inc. v. Bershader, 546 S.E.2d 907, 908 (Ga. Ct. App. 2001).

Summary judgment at this stage in the litigation is not appropriate because the reasonableness of Canady's actions is a question of fact. See Hamilton I, 589 S.E.2d at 85-86 (fact issue as to whether taxpayer's address was reasonably ascertainable precluded summary judgment); H&C Dev., Inc., 546 S.E.2d at 910 (genuine issue of material fact regarding whether landowner's new address was "reasonably ascertainable" for purposes of sending landowner notice of purchaser's intention to foreclose right to redeem). Here, Canady's actions to determine an appropriate address cannot be said to be unreasonable as a

7

matter of law. Even though neither party has requested a jury trial, questions of fact are best resolved at trial. See Matter of Placid Oil Co., 932 F.2d 394, 397 (5th Cir. 1991) (While district courts are not forbidden from drawing factual inferences on a summary judgment motion where the court will be the ultimate finder of fact, "assessments of credibility come into sharper focus once live witnesses are heard.").

Canady attempted to provide notice to Trade Antiques by: (1) having the Sheriff tack a notice on the front door of the Property, (2) publishing a notice in the applicable newspaper, (3) having the Sheriff send a notice to the only address for Trade Antiques he had, which was the address of the Property, and (4) sending a notice of his own to the address of the Property. Dkt. No. 36, Ex. 16 ¶ 12. Trade Antiques contends this was insufficient because Canady knew Trade Antiques was not occupying the Property and therefore knew that the notices tacked to the front door and sent to that address would not actually inform Trade Antiques of the foreclosure. Dkt. No. 36, Ex. 15.

It cannot be said at this point that Canady knew that the notices were ineffective. Canady testified that he "assumed" that no one was at the house, but that he had seen people "c[o]me back and forth," who presumably could have seen the notices tacked to the door or mailed to the Property. Dkt. No.

8

56, Ex. E, 115:13-25, 146:1-15. Furthermore, when Canady eventually took possession of the property and forcefully entered, he found the notices as well as other mail on a table inside the building. Dkt. No. 36, Ex. E, 191:16-25, 191:12-15. Someone with access to the Property came into contact with the notices.

Trade Antiques argues that Canady "made *no* efforts whatsoever to ascertain any contact information for anyone qualified to accept service on behalf of Trade Antiques." See Dkt. No. 36, Ex. 15 at 12 (emphasis in original). However, Canady, in fact, made several efforts to locate a proper address for Trade Antiques prior to purchasing the property, which was prior to sending notice. Canady went to the courthouse to determine if there were any liens on the Property and to view the deeds. Dkt. No. 26, Ex. E, 64:8-16. He also asked several governmental bodies and the power company for information about Trade Antiques. Dkt. No. 38, Ex. J., 64:8-15, 56:8-11. The only information those efforts revealed was that Christie might live "somewhere in Scotland" and that he was rumored to be in jail. Dkt. No. 36, Ex. E, 65:19-24. Canady also spoke with one of the neighboring landowners, which also proved fruitless. Dkt. No. 38, Ex. J., 120:9-25, 121:17-25, 122:1-13.

Trade Antiques places much emphasis on actions that Canady could have taken prior to sending the notices. After Trade

9

Antiques filed suit, Canady searched extensively for more information on Trade Antiques. Canady, post-suit, searched online for information about Trade Antiques on Google and other websites that provide information about companies, such as PowerProfiles, Cotera.com, and Dun & Bradstreet. Dkt. No. 36, Ex. E, 194:25, 195:9. In his deposition, Canady testified that research on these websites was "real simple." Dkt. No. 36, Ex. E, 190:11-13. Canady, after learning that Trade Antiques was a Florida LLC, researched Florida records. Dkt. No. 36, Ex. E, 98:21-25. Canady also searched for Trade Antiques under Georgia's Secretary of State database. However, because Trade Antiques, was never registered in Georgia, the database contained no information.

Trade Antiques also relies on measures that Canady never took (even after the lawsuit was filed), but that he could have taken. Trade Antiques asserts that Canady could have attempted to locate Christie in Scotland,[2] he could have contacted the closing attorney on the deed, he could have attempted to locate Keith T. Oulson, another member of Trade Antiques that appeared on the Deed, he could have spoken with all of the neighboring landowners about Trade Antique's whereabouts, and he could have

---

[2] Trade Antiques does not specify how Canady could have determined Christie's precise address when all he knew was that he was "somewhere in Scotland."

spoken to Rosian, the caretaker, prior to taking possession of the property. Dkt. No. 36, Ex. 15.

Whether Canady acted unreasonably by not taking those actions prior to sending the notice is a question of fact not suited for resolution on summary judgment. If anything, the applicable case law suggests that Canady did all that was required of him prior to sending notice. Many of the constitutional due process cases cited by Trade Antiques concerned when mere notice by publication, such as a newspaper, was insufficient and other methods, such as mailed notices, were required. See Mennonite, 462 U.S. at 798-99; Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950); Funderburke, 364 S.E.2d at 846-48. It is undisputed that Canady did far more than merely publishing a notice in the newspaper.

Additionally, the cases that have required a party to take additional steps for service have not required very extensive measures. For example, in Jones, the state government became aware that its attempt at service through sending certified mail had failed when the mail was returned as undeliverable. 547 U.S. at 223-24. The Court listed resending the notice via regular mail, posting a notice on the front door, and addressing the notice to "occupant" rather than a specific person as reasonable follow-up measures. Id. at 234-235. The Court specifically stated that the state government was "not required

11

to go [as] far" as searching the phonebook or tax income rolls. Id. at 235-36. In Hamilton v. Renewed Hope, Inc. ("Hamilton II"), the Georgia Supreme Court affirmed the grant of summary judgment to a tax sale purchaser and concluded that talking to the uncooperative tenant, leaving letters under the condominium door, speaking with the mortgage company and the condominium complex's management company, and searching the current phonebook constituted "reasonably diligent" efforts to locate the prior owner. 637 S.E.2d 412, 413-14 (Ga. 2006). According to the court, measures such as searching the county's state court docket or searching outdated phonebooks were not required and would be an "unreasonable burden" on the tax sale purchaser. Id. at 414-15. Canady's actions in this case are on par with what was required under Jones and Hamilton II.

Significantly, the Supreme Court has stated the means employed to provide notice must be what someone "desirous of actually informing the absentee might reasonably adopt to accomplish [that task]." Jones, 547 U.S. at 229. While a tax sale purchaser attempting to foreclose the former owner's right to redeem might have a conflict of interest, no such conflict of interest exists when a tax sale purchaser is researching the property to determine whether to purchase it. Here, before purchasing the Property at the tax sale, Canady researched the property to decide whether to buy it. Indeed, Canady's efforts

12

to locate someone associated with Trade Antiques occurred before the tax sale. At this point in time, Canady's own self interest motivated him to locate any information on Trade Antiques and its members. Dkt. No. 36, Ex. 5, 45:1-25, 63::1-12. The former owner's status and location would have significantly impacted Canady's potential return on his investment and, as a result, his decision to purchase the Property. Thus, the fact that, at one point in time, Canady had every motivation to locate someone associated with Trade Antiques, but was unable to do so, weighs heavily in his favor.

Another reason that Trade Antiques' Motion should be denied is because there is no evidence that, had Canady taken the steps Trade Antiques suggests, he would have uncovered any additional information. Trade Antiques argues that it does not need to present such evidence and that such information is irrelevant. See Dkt. No. 42. To support this argument, Trade Antiques relies on language from Jones stating that whether a particular procedure is constitutionally adequate "is assessed *ex ante, rather than post hoc*." See Dkt. No. 42 (citing Jones, 547 U.S. at 231). That statement from Jones, however, deals with a different issue entirely. The United States Supreme Court's point was that, just because a particular method of notice failed at providing actual notice, does not mean the method was constitutionally inadequate. Id. ("[T]he failure of notice in a

13

specific case does not establish the inadequacy of the attempted notice.").

Indeed whether or not it is relevant to due process, Georgia's statutory language suggests that the tax sale purchaser must have actually been able to find the party's address. O.C.G.A. 48-4-45(d) states that notice must be sent to persons living outside the county where the property is located "if the address of that person is reasonably ascertainable." That language puts the focus on whether the address could be ascertained, not whether the tax sale purchaser could have done more, regardless of what those efforts would have yielded. Additionally, Georgia courts have evaluated whether additional efforts would have proved successful. See Hamilton I, 589 S.E.2d at 85 (noting that it was "by no means clear that [the tax sale purchaser] could have obtained that address through [the] channel of information" suggested by the former owner); cf. Linn Farms & Timber P'ship v. Union Pac. R.R. Co., 661 F.3d 354, 360-61 (8th Cir. 2011) (concluding that Jones does not suggest that "an additional step is reasonable only if it will necessarily result in information that will lead to actual notice being provided").

Some of Trade Antique's suggested measures, such as speaking with Rosian, probably would have revealed additional information. However, there is evidence that several other

measures suggested by Trade Antiques would not. Canady testified that none of the websites he visited after the lawsuit was filed contained an address for Trade Antiques other than the Property's address. Dkt. No. 36, Ex. E, 190:3-10.

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment, Dkt. No. 36, is **DENIED**.

**SO ORDERED**, this 27th day of February, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA